UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  KATRINA CANAL BREACHES                                    CIVIL ACTION
              CONSOLIDATED LITIGATION
                                                                               NO. 05-4182

PERTAINS TO: LEVEE
(LOUISIANA ENVIRONMENTAL                                    SECTION: "K"(4)
 ACTION NETWORK, NO. 06-9147)

<u>MEMORANDUM AND ORDER</u>

Before the Court is Defendant United States Army Corps of Engineers' ("Corps") Motion

to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(1) (Civ. No. 05-4182, Rec. Doc. 2951).  This motion seeks dismissal of the complaint

lodged by Plaintiff Louisiana Environmental Action Network ("LEAN") against the Corps for

violations of the Resource Conservation and Recovery Act ("RCRA"), codified at 42 U.S.C. §

6961 and 6972, for harm arising from Hurricane Katrina.[1]  Having reviewed the pleadings,

relevant statutory and case law, this Court grants the Corps' Motion to Dismiss for the reasons

assigned below.

I.  FACTUAL AND PROCEDURAL BACKGROUND

LEAN commenced its action against the Corps on October 27, 2006, alleging violations

of RCRA in connection the damage caused by Hurricane Katrina.  LEAN Complaint ¶ 1

(hereinafter "Compl.").  Specifically, LEAN alleges that the Corps failed to "design, construct,

and maintain adequate containment structures around the London Avenue Canal," a canal

_____

[1]LEAN's complaint is Record Document 1 of Civil Action No. 06-9147.  That civil
action was consolidated within the Katrina litigation umbrella by order of this Court on
November 17, 2006 (Civ. No. 06-9147, Rec. Doc. 4; Civ. No. 05-4182, Rec. Doc. 1676).

1

adjacent to the Vista Park Neighborhood in New Orleans.  Compl. ¶ 1.  As a result of these

alleged failures, the levees of the London Avenue Canal were breached by water, "result[ing] in

the disposal of solid and hazardous waste from the London Avenue Canal into the surrounding

neighborhood, which may present an imminent and substantial endangerment to health and the

environment."  Compl. ¶ 1.  LEAN represents residents of the Vista Park neighborhood whose

property "contains deposits of sediment that resulted from the London Avenue Canal levee

breach."[2]  Compl. ¶ 5.

LEAN alleges in this matter that the Corps has violated RCRA, specifically 42 U.S.C. §

6972(a)(1)(B).  Compl. ¶ 22-24.  The statute provides, in relevant part:

> [A]ny person may commence a civil action on his own behalf . . .
>
> . . .
>
> (B) against any person, including the United States and any other governmental
> instrumentality or agency, to the extent permitted by the eleventh amendment to
> the Constitution, and including any past or present generator, past or present
> transporter, or past or present owner or operator of a treatment, storage, or
> disposal facility, who has contributed or who is constirutbing to the past or
> present handling, storage, treatment, tansportation, or disposal of any solid or
> hazardous waste which may present an imminent and substantial endangerment to
> health or the environment . . . .

42 U.S.C. § 6972(a)(1)(B).  LEAN claims that the breach "caused water and other materials from

the canal" to pour into the neighborhood, including "sediments [that] contain discarded material

that may pose a substantial present or potential hazard to human health or the environment."

---

[2]There appears to be no dispute that LEAN has standing through its representation of the
residents of the Vista Park neighborhood.  *See Holy Cross Neighborhood Ass'n v. U.S. Army
Corps of Engineers*, No. Civ. A. 03-370, 2003 WL 22533671, at *3 (E.D. La. Nov. 3, 2003)
(Fallon, J.) (holding that LEAN and neighborhood plaintiffs had standing to sue Army Corps of
Engineers).  Moreover, the Corps does not dispute that LEAN has fulfilled the 90-day notice
requirements of RCRA.  42 U.S.C. § 6972(b)(2)(A); *see* Compl. at 2, Ex. A.

Compl. ¶ 14-15.  As to relief, LEAN requests this Court to issue injunctions ordering the Corps

to analyze the sediments deposited after Hurricane Katrina, determine "alternatives available for

safely cleaning up any contaminated sediment and soil," to present the alternatives for public

comment, and to select the "best alternatives for cleanup and management" of the waste.  Compl.

at 8-9 (Prayer for Relief).  LEAN also seeks a declaratory judgment "that the Corps is

responsible for the risks posed by contaminated soils and sediments in the Vista Park

neighborhood," and LEAN requests an award of costs for the litigation.  Compl. at 9 (Prayer for

Relief).[3]

  The Corps moves to dismiss on the grounds that this Court lacks subject matter

jurisdiction over this matter.  The Corps forwards two arguments in support of this premise.

First, regarding § 6972 (the "citizen suit" provision), the Corps claims that the statute does not

contain an waiver of sovereign immunity, which must be explicit.  Mot. to Dismiss at 14.

Because there is no explicit waiver, this action is barred by the more specific assertion of federal

immunity for damage caused by flood or flood waters in the Flood Control Act.

  The Corps also addresses another provision of RCRA found at 42 U.S.C. § 6961(a), the

"federal facilities" provision.[4]  The Corps concedes that there is a specific waiver of sovereign

---

[3]LEAN does not seek punitive damages, nor would this Court be able to award such
under RCRA.  *See City of Jacksonville v. Department of the Navy*, 348 F.3d 1307, 1316 n.5 (11th
Cir. 2003) ("The Supreme Court also held that there was no waiver of sovereign immunity from
punitive penalties under the federal facilities provision of [RCRA], as well as no waiver from
these penalties under the citizen suit [provision].") (citing *United States Dep't of Energy v. Ohio*,
503 U.S. 607, 611, 627-28, 112 S.Ct. 1627, 1631, 1639-40, 118 L.Ed.2d 255 (1992)).

[4]The "federal facilities" section provides, in relevant part:

Each department, agency, and instrumentality of the executive, legislative, and
judicial branches of the Federal Government (1) having jurisdiction over any

immunity in § 6961.  Mot. to Dismiss at 15.  However, the Corps argues that this waiver does not

apply to LEAN's claims for two reasons.  First, LEAN has failed to allege that they are enforcing

the Corps to comply with federal, state or local "requirements," an allegation needed for § 6961

to apply.  Mot. to Dismiss at 17.  Second, the Corps must have "jurisdiction" over the canal, or it

must be currently engaged in an activity resulting in the disposal or management of solid waste

to be liable under § 6961.  Mot. to Dismiss at 21.  Because the Corps does not have jurisdiction

over the London Avenue canal, and because it does not currently engage in any solid waste

disposal or management activities, the Corps states that § 6961 cannot be the basis for liability

here.

      In order to appropriately address the present motion, the Court must clarify the pleadings.

As stated above, LEAN appears to have brought its suit under the citizen suit provision of

RCRA, § 6972.  Compl. ¶ 22-24 (citing 42 U.S.C. § 6972(a)(1)(B)).  LEAN further claimed that

the immunity waiver provision of § 6961 of RCRA, the federal facilities section, applies to an

action under § 6972.  Compl. ¶ 10.  The Corps countered in its motion to dismiss that any waiver

of sovereign immunity in § 6972 is preempted by the explicit invocation of sovereign immunity

---

        solid waste management facility or disposal site, or (2) engaged in any activity
        resulting, or which may result, in the disposal or management of solid waste or
        hazardous waste shall be subject to, and comply with, all Federal, State, interstate,
        and local requirements, both substantive and procedural (including any
        requirement for permits or reporting or any provisions for injunctive relief and
        such sanctions as may be imposed by a court to enforce such relief), respective
        control and abatement of solid waste or hazardous waste disposal and
        management . . . .  The United States hereby expressly waives any immunity
        otherwise applicable to the United States with respect to any such substantive or
        procedural requirement . . . ."

42 U.S.C. § 6961(a).

in the Flood Control Act, and therefore LEAN's suit is precluded insofar as it is based on § 6972. Mot. to Dismiss at 13. Moreover, and herein lies the confusion, the Corps has alleged that LEAN did not fulfill the elements of a § 6961 claim, so therefore the waiver in § 6961 did not apply to LEAN's case. Mot. to Dismiss at 17. In response, LEAN argued that the waiver of § 6961 can be applied to a suit under § 6972, and that LEAN did fulfill the requirements of § 6961, resulting in the sovereign immunity waiver applying to this case. Plaintiff's Reply at 8.

The problem that the Court had with these pleadings is that the Corps, in attempting to thoroughly respond to LEAN's allegations, argued that LEAN had not fulfilled § 6972 *or* § 6961. LEAN, in response, claimed that § 6961 is satisfied, and that the waiver of § 6961 may be applied to an action under § 6972 because "all of these provisions [of RCRA] should be read together." Opp. at 6. Thus, it could be argued that the Corps inadvertently opened the door to LEAN's presenting a § 6961 federal facilities claim as well as a § 6972 citizen suit claim. However, keeping in mind that "[a]ll pleadings shall be so construed as to do substantial justice," Fed. R. Civ. P. 8(f), this Court determines that the best reading of LEAN's complaint is that its claims are confined to § 6972, and that it bases its claim on § 6961 only as a means to establish a waiver of sovereign immunity. *See* Compl. ¶ 10 (citing § 6961(a)(2)'s provision that the United States "expressly waives any immunity otherwise applicable to the United States"). This reading of LEAN's complaint is bolstered by the fact that LEAN cites § 6961 solely for the aforementioned sovereign immunity waiver provision, Compl. ¶ 10, and there is otherwise no specific allegations that the Corps is liable under the federal facilities provision of § 6961. Accordingly, this Court reads the Corps' motion to dismiss as based on the following allegations: (1) LEAN's § 6972 claim is preempted by the Flood Control Act, (2) § 6961

5

immunity cannot be applied to claims brought under § 6972.

Having reviewed the applicable law and the pleadings, this Court finds that (1) any general immunity waiver in § 6972 is overridden by the explicit invocation of sovereign immunity for federal flood control projects in the Flood Control Act, and (2) the very explicit waiver of sovereign immunity in § 6961 cannot be imputed to any claim under § 6972.  Since LEAN has not specifically plea a claim under § 6961, the waiver provision within that section is not applicable in the present case.


## II.  ANALYSIS

### A.    Legal Standard

Generally, a motion to dismiss for lack of subject matter jurisdiction under to Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to "challenge the subject matter jurisdiction of the district court to hear a case."  *In re Katrina Canal Breaches Consol. Litig.*, 471 F. Supp. 2d 684, 687 (E.D. La. 2007) (Duval, J.).  The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party "demonstrating jurisdiction," in this case, LEAN.  *Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir. 1995) (applying standard to Rule 12(b)(1) motion to dismiss on sovereign immunity grounds).  By addressing a Rule 12(b)(1) jurisdictional attack before the merits, a court without jurisdiction avoids "prematurely dismissing a case with prejudice," and instead the dismissal is due to lack of subject matter jurisdiction that "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).  This motion "should be granted only if it appears certain that the

6

plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

However, this particular Rule 12(b)(1) motion includes a preliminary factual issue.  In determining whether the Flood Control Act immunizes the Corps from liability under the citizen suit provision of RCRA, § 6972, this Court must determine whether the London Avenue Canal and the waters that breached the levees qualify as a flood control project and "flood waters," respectively.  *See Central Green Co. v. United States*, 531 U.S. 425, 434, 121 S.Ct. 1005, 1011 148 L.Ed.2d 919 (2001) (requiring analysis of the "character of the waters" that caused damage in order to apply Flood Control Act immunity).  This Court has considered this precise issue previously within this litigation umbrella for Katrina-related claims.  In its opinion of February 2, 2007, this Court addressed a Rule 12(b)(1) motion to dismiss by the Corps in which it sought to dismiss claims for damage arising from the Mississippi River-Gulf Outlet ("MRGO") during Hurricane Katrina.  *In re Katrina Canal Breaches*, 471 F. Supp. 2d at 687.  After evaluating the myriad Supreme Court and Fifth Circuit precedents on point, this Court found that the Corps' motion to dismiss for Flood Control Act immunity required an assessment of the nature of the relevant structures and waters that caused the damage.  Therefore, it was necessary to address the Rule 12(b)(1) motion as a Rule 12(b)(6) motion because the "jurisdictional facts concerning immunity [were] inextricably intertwined with the plaintiff's claim.*"  Id.* at 689 (quoting *Montez v. Department of the Navy*, 392 F.3d 147, 151 (5th Cir. 2004)).  This approach is supported by the Fifth Circuit, which as recognized that, in such a scenario,  "the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action," and therefore

"'the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case' under either Rule 12(b)(6) or Rule 56." *Montez*, 392 F.3d at 150 (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)).   Because the Corps stance that the Flood Control Act immunized it from liability was intertwined with the factual issues that *Central Green* required to be addressed, such as the character of the flood waters the caused the damage and the purpose of the structures that allegedly failed, this Court found that *Montez* indeed was the proper rubric, and addressed the Corps' Rule 12(b)(1) motion as a Rule 12(b)(6) motion.  *Id.* at 695-96.[5]  While the prior *In re Katrina Canal Breaches* decision dealt with Flood Control Act immunity from claims under the Federal Tort Claims Act, this Court finds that the present action is otherwise identical in its operative facts, and therefore will similarly follow *Montez* in assuming jurisdiction and addressing the present matter as a Rule 12(b)(6) motion to dismiss, the most proper modus considering the current posture of this case.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that in response "to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim" the pleader may raise by motion the defense of "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the

---

[5]The Court will not reiterate its analysis regarding the appropriate standard under *Central Bank*, *Montez* and their various progeny, instead incorporating that portion of this Court's previous opinion by reference, and commending the reader to that opinion: *In re Katrina Canal Breaches Consol. Litig* , 471 F. Supp. 2d 684, 687-90 (E.D. La. 2007) (Duval, J.) (under the heading "A. Standard of Review").

light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5ᵗʰ Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5ᵗʰ Cir. 1999)). The plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face" in order to survive a Rule 12(b)(6) motion to dismiss. *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct 1955, 1974, 167 L.Ed.2d 929 (2007).[6]  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (quotation marks, citations, and footnote omitted).  "Conversely, 'when the allegations in a complaint, however, true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier v. Taylor*, --- F.3d ----, No. 05-61186, 2007 WL 2892970, at *2 (5ᵗʰ Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1966).

_____

[6]This Court has previously stated that a district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957); *Blackburn v. Marshall*, 42 F.3d 925, 931 (5th Cir.1995). The Supreme Court has recently abrogated the often cited "no set of facts" language in *Conley* commenting that the case has been frequently mischaracterized as setting forth a minimum pleading standard when it was simply "describ[ing] the breadth of opportunity to prove what an adequate complaint claims." *Twombly*, 127 S.Ct. at 1968. In other words, the *Twombly* court reads *Conley* as standing for the proposition that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (citing *Sanjuan v. American Bd. of Psychiatry and Neurology*, 40 F.3d 247, 251 (7ᵗʰ Cir. 1994)(once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint"). Thus, rejecting the *Conley* "no set of facts" test, the *Twombly* court employs a plausibility standard for scrutinizing the sufficiency of pleadings in the context of Rule 12(b)(6) motion.

**B.        Application of the Flood Control Act to the London Avenue Canal**

The Corps' primary argument in its motion to dismiss is that the Flood Control Act preempts LEAN's claim under § 6972.  Mot. to Dismiss at 11.  Prior to determining whether the Flood Control Act does so, this Court must first address whether the Flood Control Act even applies to this damage caused by the levee breaches at the London Avenue Canal.  This argument was presented by amici plaintiffs, who supplied this Court with an additional memorandum in opposition to the United States' motion to dismiss (hereinafter "Amici Opp.")[7]. Amici plaintiffs argue that the Flood Control Act's immunity does not apply to the breaching of the London Avenue Canal because that canal "was neither designed nor operated as a federal flood control project," and instead was operated "as an outfall drainage canal."  Amici Opp. at 2. Therefore, citing the Supreme Court's decision in *Central Green Co. v. United States*, 531 U.S. 425, 121 S.Ct. 1005, 148 L.Ed.2d 919 (2001), the amici argue that the London Avenue Canal does not necessarily qualify as a facility operated for "flood control purposes," and the motion to dismiss should subsequently be denied.  Amici Opp. at 3.

The Court disagrees.  As discussed by this Court in its previous decision regarding the Corps' liability for Katrina damage, *In re Katrina Canal Breaches Consolidated Litigation*, 471 F. Supp. 2d 684 (E.D. La. 2007) (Duval, J.), the *Central Green* Court abrogated the Supreme Court's earlier case, *United States v. James*, 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483,

---

[7]The amici plaintiffs are plaintiffs who have brought claims against the Corps in the following actions:  *Bourgeous et al.*, Civ. A. No. 06-5131, *Adams et al.*, Civ. A. No. 06-5128, and *Ferdinand et al.*, Civ. A. No. 06-5132.  They all claim to be "home, property and business owners, and residents who suffered damages and losses from flooding proximately caused by the failure of the London Outfall Canal Levee."  Amici Opp. at 1.

(1986), which had stated in dicta that the § 702c immunity of the Flood Control Act broadly applies to "all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control." *Central Green*, 531 U.S. at 430, 121 S.Ct. at 1005.  Indeed, as amici plaintiffs claim, *Central Green* requires an analysis of the purpose for which the London Avenue Canal was constructed, but moreover whether the damage was indeed *caused* by flood waters, as opposed to normal water flow.  *Central Green*, 531 U.S. at 436, 121 S.Ct. at 1012 ("This case does raise a difficult issue because the property damage at issue was allegedly caused by continuous or repeated flows occurring over a period of years, rather than by a single, discrete incident."); *see In re Katrina Canal Breaches*, 471 F. Supp. 2d at 694-95 ("[I]n reality *Central Green* requires the Court to identify *the cause of the damage* rather than base a decision on the mere fact that a flood control project was involved.") (emphasis in original)).

Applying *Central Green* to the present case, this Court finds that § 702c immunity of the Flood Control Act indeed does protect the Corps for damage caused via the London Avenue Canal.  The Court again returns to its previous decision in *In re Katrina Canal Breaches*, in which this Court determined whether the Mississippi River-Gulf Outlet ("MRGO") "is a flood control project and whether waters that flow through the MRGO are floodwaters."  471 F. Supp. 2d at 690.  The plaintiffs in that case successfully opposed the Corps' motion to dismiss because they alleged that the MRGO was designed to be a "navigable waterway," instead of a flood control project, and substantiated that claim by showing that the Corps never alleged that the MRGO included "flood control elements" or that the MRGO ever became "part of the Lake Pontchartrain and Vicinity Protection Plan ('LVP') which **is** the legislation that authorized the

11

flood control projects designed to protect this area from flooding -- that is the levees and flood walls surrounding the City of New Orleans and vicinity." *Id.* at 691 (emphasis in original). Moreover, the plaintiffs in that case specifically sought damages "for the effects of the waters in the MRGO with respect to the decimation of the wetlands over a long period of time," as opposed to solely seeking damages from the hurricane-caused flood. *Id.* at 694. As a result, this Court concluded that, under the *Central Green* standard, further discovery was necessary to properly determine the applicability of Flood Control Act immunity and that it would be "extremely precipitous" to make factual determinations in the posture of a Rule 12(b)(6) motion to dismiss. *Id.* at 695

Contrasting the present case with the prior disposition, the Court finds that plaintiffs (both LEAN and amici) have not made any "plausible" claim that the Flood Control Act should not apply here, and indeed all of the factual bases point towards the London Avenue Canal being part of a flood control project. Plaintiffs clearly allege that it was the London Avenue Canal levees were breached during Hurricane Katrina, which caused "water and other materials from [the London Avenue Canal], including sediment, to pour into the Vista Park neighborhood and the City of New Orleans." Compl. ¶ 14. There is clear statutory evidence that the London Avenue Canal levees were part of a federal flood control project. In the Energy and Water Development Appropriations Act of 1992, Congress specifically provided that the London Avenue Canal levees be improved by the Secretary of the Army:

> Provided further, That with funds appropriated herein and hereafter for the Lake Pontchartrain and Vicinity, Louisiana Hurricane Protection project, the Secretary of the Army is authorized and directed to provide parallel hurricane protection along the entire lengths of the Orleans Avenue and *London Avenue Outfall*

12

*Canals* by raising levees and improving flood protection works along and parallel to the entire lengths of the outfall canals and other pertinent work necessary to complete an entire parallel protection system.

Pub. L. 102-104, 105 Stat. 510, 514 (1992) (emphasis added). The character of the waters that caused this damage also qualifies under the *Central Green* standard as flood waters, considering that LEAN alleges that the damage was caused by surges from a hurricane that breached the levee walls, instead of damage that was caused by "routine use of the canal." *Central Green*, 531 U.S. at 436, 121 S. Ct. at 1012. Unlike this Court's prior decision in *In re Katrina Canal Breaches*, there is no serious dispute here that the London Avenue Canal was not part of the LPV Protection Plan, or that it was used for flood protection. Amici plaintiffs claim that the London Avenue Canal "was neither designed nor operated as a federal flood control project." Amici Opp. at 2. However, even the amici plaintiffs cite a federal report referring to the London Avenue Canal levees as "parallel protection in the form of *floodwalls*." Amici Opp. at 5.[8] Accordingly, this Court finds that the London Avenue Canal is indeed part of a federal flood control project, and the damage derived from the levee breach that arose at the London Avenue Canal during Hurricane Katrina does qualify as "any damage from or by floods or flood waters at any place," 33 U.S.C. § 702c, and therefore the Flood Control Act does apply to the London Avenue Canal.[9]

---

[8]Amici plaintiffs cite the "Final Draft, Performance Evaluation of the New Orleans and Southeast Louisiana Hurricane Protection System, June 1, 2006." Amici Opp. at 5.

[9]The Court notes that its holding regarding Flood Control Act immunity for the Corps for damage caused by Hurricane Katrina is confined only to that damage arising directly from breaches of the levees at the London Avenue Canal. This Court will address any further assertions of sovereign immunity by the Corps for damage arising from other sites when it issues

**C.  Flood Control Act Immunity as Applied to RCRA's "Citizen Suit" Provision, 42 U.S.C. § 6972**

Having established that the Flood Control Act immunity would generally apply to the London Avenue Canal, this Court must determine whether Flood Control Act immunity overrides RCRA's citizen suit provision, § 6972.  Section 6972 includes a provision allowing suits against the United States.  Specifically, the portion under which LEAN brings its claims reads as follows:

§ 6972. Citizen suits

(a) In general

Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf –

(B) against an person, including the United States an any governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . .

42 U.S.C. § 6972(a)(1)(B).[10]  The fact that this statute allows "any person" to "commence a civil

---

its opinion on the motion regarding the levee breaches during Hurricane Katrina presently under advisement (Civ. A. No. 05-4182, Doc. 6380).

[10]Section 6972 suits may not proceed if barred by "subsection (b) or (c)."  These two subsections generally include the requirement that the plaintiff provide notice to certain parties prior to filing suit under § 6972, and the prohibition against filing any suits where a State or an Administrator has commenced actions seeking to remedy the injury in question.  *See* 42 U.S.C. §

action" against "the United States" is ample waiver of sovereign immunity for most suits against the United States.  *See United States v. Olson*, 546 U.S. 43, 44, 126 S.Ct. 510, 511, 163 L.Ed.306 (2005) (interpreting 28 U.S.C. § 1346(b) of Federal Tort Claims Act, which "authorizes private tort actions against the United States," as meaning that "the United States waives sovereign immunity 'under circumstances' where local law would make a 'private person' liable in tort.) (quoting 28 U.S.C. § 1346(b)) (emphasis omitted)).

In determining whether this permission to sue the United States is preempted by the Flood Control Act, this Court must return to first principles.  "It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941)); *see Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998) (quoting *Mitchell*).  Subsequent to massive flooding of the Mississippi River in 1927, the "agitation and concern" over the disaster, along with the need to avert further such disasters, led to the passage of the Flood Control Act of 1928.  *State of Oklahoma ex rel. Phillips v. Guy F. Atkinson Co.*, 313 U.S. 508, 516-17, 61 S.Ct.1050, 1055-56, 85 L.Ed.2d 1487 (1941).  The Flood Control Act commanded the Secretary of War to execute a control program to control the destructive Mississippi River floods, and the

6972(b)(1) (requiring 60-day notice to the Administrator of the U.S. Environmental Protection Agency, state officials, and the alleged violator); 42 U.S.C. § 6972(b)(2)(B) (no action may be brought where the Administrator "has commenced and is diligently prosecuting an action").  Here, LEAN has alleged that proper notice was provided (Compl. ¶ 4), and the parties have not made any allegation that this suit may be barred by subsections (b) or (c) of § 6972.  Therefore, this Court will presume that these provisions do not bar this suit from otherwise proceeding.

Army Corps of Engineers substantially fulfilled this mandate. *See Danforth v. United States*, 308 U.S. 271, 278-80, 60 S.Ct. 231, 233-34, 84 L.Ed. 240 (1939) (discussing authority of Secretary of War and Chief of Engineers, U.S. Army, to execute mandate of Flood Control Act); *see also United States v. Sponenbarger*, 308 U.S. 256, 262, 60 S.Ct. 225, 227, 84 L.Ed. 230 (1939) (explaining that the Flood Control Act was "a comprehensive ten-year program for the entire [Mississippi River] valley, embodying a general bank protection scheme, channel stabilization and river regulation, all involving vast expenditures of public funds.").

As part of this far-reaching flood control project, Congress enacted an immunity provision that absolves the United States from significant liability from any injury caused incident to floods. The immunity provision reads in relevant part, "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place . . . ." 33 U.S.C. § 702c. Thus, while § 6972 does permit the federal government to be sued, the fact that this specific case arises from flood waters requires this Court to determine what the interplay is between § 6972's provision for suits against the United States and the explicit invocation of federal sovereign immunity in the Flood Control Act. Because the clear text of the statutes presents an apparent conflict, this Court must proceed further to determine whether the Flood Control Act overrides § 6972, or vice versa.

While a broad search of federal case law suggests that no court has addressed the interaction of § 6972 and the Flood Control Act, other courts have addressed statutes analogous to § 6972 and found them to be preempted by the Flood Control Act. A statute with provisions similar to those at issue in this case is the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671

16

*et seq.* The FTCA states, "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. This language regarding liability of the federal government is similar to that of § 6972, which provides that "any person may commence a civil action on his own behalf . . . against any person (including (a) the United States, and (b) any other governmental instrumentality or agency . . . .)." 42 U.S.C. § 6972.

Where the FTCA and the Flood Control Act conflict, courts have uniformly held that the explicit sovereign immunity invocation in the Flood Control Act abrogates any permission in the FTCA to sue the federal government. In *United States v. James*, 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483, (1986), the Supreme Court addressed tort claims brought against the United States pursuant to the FTCA for injuries suffered during serious boating accidents on federally-operated reservoirs.[11] One accident involved the Cortanbleau Drainage Structure in Louisiana, a

---

[11]As stated above, the Supreme Court in *Central Green* abrogated *James*' holding insofar as *James* interpreted the terms "flood" and "flood waters" very broadly. *Central Green*, 531 U.S. at 431, 121 S.Ct. at 1009 (noting that courts had found that *James*' dicta regarding the definition of flood waters "sweeps so broadly as to make little sense."). This Court cites *James* for the still valid proposition that, where once it is determined that "flood" or "flood waters" caused the relevant damage, the Flood Control Act overrides any provision in the FTCA allowing suit against the United States.

It is noteworthy that, while the Flood Control Act ordered a flood control project to be commenced to control the Mississippi River, the immunity provision is far broader, extending federal immunity from flood waters to "any place," and indeed it has been applied well beyond the Mississippi River projects. *See Central Green*, 531 U.S. at 427, 121 S.Ct. at 1007 (addressing application of Flood Control Act to harm allegedly caused by Madera Canal in California's San Joaquin Valley); *Merritt v. United States*, 121 F.3d 716, 716 (9th Cir. 1997) (holding Flood Control Act immunizes United States from injury sustained by plaintiff on Lake Havasu in Arizona).

federal flood control project, where a boy drowned while boating on the reservoir when the Army Corps of Engineers opened the gates to the reservoir, causing the boy's boat to be disabled and drawn through the spillway.  The district court found the Corps liable for failure to warn, but found that the United States was immune under the Flood Control Act Immunity.

The Supreme Court affirmed the district court's finding that the United States was immune from liability.  The Court found that the plain language of the Flood Control Act "outline[d] immunity in sweeping terms," namely that no liability of "*any* kind shall attach to or rest upon the United States for *any* damage from floods or by flood waters at *any* place."  *Id.* at 604, 106 S.Ct. at 3120-21 (emphasis in original).  The Court similarly found that Congress intended such broad immunity because the Flood Control Act was meant to allow the Corps to construct protective flood control systems through the Mississippi Valley, and Congress did not desire "thousands of lawsuits for damages against the Federal Government in the next 10, 20, or 50 years" for the protection that the government was furnishing.  *Id.* at 607, 106 S.Ct. at 3122.  Because this broad immunity was "no drafting inadvertence," the Court concluded that, regardless of any permission in the FTCA to sue the United States, the Flood Control Act was not abrogated by it.  *Id.* at 608, 106 S.Ct. at 3122.  Therefore, as the plaintiff's injury occurred on a federal flood control project, it was barred by sovereign immunity.

Admittedly, § 6972 and the FTCA do include one difference that may amount to some significance.  The same section of the FTCA that imposes liability on the United States, § 2674, includes a provision that states,

> With respect to any claim under this chapter, the United States shall be entitled to
> assert any defense based upon judicial or legislative immunity which otherwise

18

would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

28 U.S.C. § 2674.  In contrast, § 6972 does not contain such an caveat for the invocation of sovereign immunity, which one might argue points to Congress' intent that sovereign immunity cannot be invoked in suits brought under § 6972.

However, this distinction does not sufficiently persuade this Court to interpret § 6972 differently from the FTCA.  "[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996); *see United States v. Williams*, 514 U.S. 527, 531, 115 S.Ct. 1611, 1615, 131 L.Ed.2d 608 (1995) (courts must "constru[e] ambiguities in favor of immunity"); *see also Orff v. United States*, 545 U.S. 596, 603, 125 S.Ct. 2606, 2610-11,162 L.Ed.2d 544 (2005) (holding that statute that permitted the United States to be joined "as a necessary party defendant" did not permit "a suit solely against [the United States]").  Keeping this premise in mind, it is significant that where Congress intends on fully waiving sovereign immunity, it does so explicitly.  In the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), another environmental regulation statute, Congress specifically provided that, "Each department, agency and instrumentality of the United States . . . shall be subject to, and comply with, this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title."  42 U.S.C. § 9620(a).  Referring then to § 9607, we find that Congress delineated that any party (which includes the United States under § 9620) would be liable "[n]ot

withstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section."  42 U.S.C. § 9607.  Subsection (b) of § 9607 lists only four defenses for the federal government to an action brought under CERCLA, none of which are sovereign immunity.  42 U.S.C. § 9607(b).  As a result of this explicit waiver, courts have held that sovereign immunity provision of the Flood Control Act is overridden by the waiver of sovereign immunity under § 9607(b) of CERCLA.  *United States v. Iron Mountain Mines, Inc.*, 881 F. Supp. 1432, 1440-41 (E.D. Cal. 1995) ("In combination, this language [of § 9607] appears to expressly waive any immunity that the United States may have under any other statute or common law rule."); *see United States v. City of New Orleans*, No. Civ. A. 02-3618, 2003 WL 22208578 (E.D. La. Sept. 19, 2003) (citing *Iron Mountain Mines* and reaching same result); *Crowley Marine Servs., Inc. v. Fednav Ltd.*, 915 F. Supp. 218, 221 (E.D. Wash. 1995) ("As stated in the court's previous order, the immunity claimed pursuant to the [Flood Control Act] was subsequently surrendered by CERCLA's broad-sweeping waiver in 42 U.S.C. § 9620(a) [CERCLA]").

Another example comes directly from RCRA in the federal facilities section, § 6961.  This section generally provides that federal departments, agencies, and instrumentalities engaged in "management of solid waste or hazardous waste shall be subject to, and comply with, all Federal State, interstate, and local requirements," regarding "control and abatement" of such waste, including "substantive and procedural" requirements.  42 U.S.C. § 6961(a).  Section 6961 also specifically states:

> The United States hereby expressly waives any immunity otherwise applicable to the United States with respect to any such substantive or procedural

> requirement (including, but not limited to, any injunctive relief, administrative order or civil or administrative penalty or fine referred to in the preceding sentence, or reasonable service charge.

*Id.*  Like CERCLA's waiver of sovereign immunity, the waiver in RCRA's § 6961 is explicit, delineating in clear language that "any immunity" of the United States is "expressly waived" regarding actions under this section.  In contrast, Congress did not provide such an explicit waiver in § 6972, a section contained within the same act.  Considering that "[w]hen Congress includes particular language in one statutory provision, and excludes it in another, [courts] generally assume that Congress did so intentionally," this Court is bound not to read in a waiver in § 6972 because Congress certainly knew how to insert a waiver if it so intended.  *Uniroyal Chemical Co., Inc. v. Deltech Corp.*, 160 F.3d 238, 244 (5th Cir. 1998).  This maxim is only more true "particularly where the words are excluded in other sections of the *same act*."  *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) (emphasis added).  Therefore, this Court holds that § 6972 does not override the invocation of sovereign immunity of the Flood Control Act, insofar as LEAN's claim is premised on any waiver of immunity in § 6972.

**D.  Application of the Waiver in the RCRA "Federal Facilities" Section, § 6961, to the Citizen Suit Section, § 6972**

While the citizen suit provision of the RCRA, 42 U.S.C. § 6972, does not provide a waiver broad enough to override Flood Control Act immunity, the federal facilities provision of RCRA, 42 U.S.C. § 6961, does have such a waiver.  The relevant statutory language provides:

> The United States hereby expressly waivers any immunity otherwise applicable to the United States with respect to any such substantive or procedural requirement

21

> (including, but not limited to, any injunctive relief, administrative order or civil or administrative penalty or a fine referred to in the preceding sentence, or reasonable service charge).

42 U.S.C. § 6961.  There is no dispute among the parties that § 6961 does contain a waiver broad enough to preempt Flood Control Act immunity.  The relevant issue, therefore, is whether § 6961 immunity can be transferred to an action under § 6972, and if so, whether LEAN has sufficiently fulfilled the requirements for § 6972 immunity.  This Court finds that the waiver in § 6961 cannot be transferred to a claim under § 6972, and therefore this Court need not address the issue of whether LEAN has fulfilled the requirements of § 6961 immunity waiver.

In resolving this issue, the Court returns to the principle that has guided this opinion, namely that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  *Lane*, 518 U.S. at 192.  Therefore, the courts of the United States generally hold that "[w]aivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed.'"  *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992) (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990)).  Such waivers must be expressed explicitly within the statutory text.  *See United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 930 (10th Cir. 1996) ("If waiver is not unequivocal from the text, the government retains its sovereign immunity."); *Department of the Army v. Federal Labor Relations Auth.*, 56 F.3d 273, 277 (D.C. Cir. 1995) (a waiver of sovereign immunity "must appear on the face of the statute; it cannot be discerned in (lest it be concocted out of) legislative history"); *Commercial Union Ins. Co. v. United States*, 928 F.2d 176, 180 (5th Cir. 1991)

(waivers of sovereign immunity "must be specific and explicit any cannot be implied by construction of an ambiguous statute"); *Resolution Trust Corp. v. Miramon*, 935 F. Supp. 838, 841-842 (E.D. La. 1996) (Fallon, J.) (waivers "'must appear on the face of the statute' and 'must be strictly construed.'") (citation omitted).

In the case at hand, LEAN seeks to find some waiver of sovereign immunity that will allow it to proceed under the citizen suit provision, § 6972.  Because no waiver explicitly exists in § 6972, LEAN seeks to apply the waiver in the federal facilities section, § 6961, to LEAN's action under § 6972.  Opp. at 6.  LEAN claims:

> In reality, all of these provisions should be read together.  42 U.S.C. § 6972 authorizes suit against the liable parties and 42 U.S.C. § 6961 clarifies Congress' clear and broad intent to waiver "any immunity otherwise applicable to the United States," and specifies that the waiver includes injunctive relief and sanctions.

Opp. at 6-7.  However, waivers must be "specific and explicit."  *Commercial Union*, 928 F.2d at 180.  While no court has addressed whether an immunity waiver in one section of RCRA may be applied to another section, an evaluation of other statutes makes it clear that if Congress intended to have § 6961's waiver apply to an action under § 6972, it would have said so.  Again, among the best examples comes from CERCLA's waiver of sovereign immunity, which states as follows:

> (a) Application of chapter to Federal Government

> (1) In general

> Each department, agency and instrumentality of the United States (including the executive, legislative, and judicial branches of the government) shall be subject to, and comply with, this chapter in the same manner and to the same extent, both

procedurally and substantively, as any nongovernmental entity, including liability
under section 9607 of this title.

42 U.S.C. § 9620(a). The section referred to within this text, § 9607, is the section discussed

earlier in this opinion that explicitly delineates liability. 42 U.S.C. § 9607(a) (outlining bases of

liability). Section 9607 also specifies which defenses may be invoked against such liability,

notably omitting sovereign immunity. 42 U.S.C. § 9607(b) (listing specific defenses that may be

invoked). Two differences are noteworthy in comparing RCRA and CERCLA. Where

CERCLA's immunity waiver in § 9620 is entitled "Application of *chapter* to Federal

Government," and states that the United States "shall be subject to, and comply with, this

*chapter*," 42 U.S.C. § 9620 (emphasis added), RCRA's waiver in § 6961 makes no such mention

of its application outside of that section. Moreover, CERCLA's § 9620 even specifically refers

to the liability provision in § 9607, thus evincing Congress' clear intent that the waiver in § 9620

applies beyond that section to § 9607. RCRA's § 6961 lacks any such reference outside of that

section. Without such clear congressional intent to waive sovereign immunity beyond § 6961

placed within the statutory language, this Court will not impute § 6961's waiver of sovereign

immunity to § 6972.

## III. CONCLUSION

This Court holds that LEAN's claims against the U.S. Army Corps of Engineers are

barred by sovereign immunity because (1) RCRA § 6972 does not contain a waiver of sovereign

immunity sufficient to overcome the Flood Control Act, and (2) § 6961's waiver cannot be

imputed to a claim under § 6972. Accordingly,

**IT IS ORDERED** that the United States' Motion to Dismiss (Civ. No. 05-4182, Rec. Doc. 2951) is hereby **GRANTED**, and LEAN's Complaint (Civ. No. 06-9147, Rec. Doc. 1) is hereby **DISMISSED WITHOUT PREJUDICE.**  Because this Court has determined that LEAN did not make a claim under § 6961, LEAN is granted permission to replead its claim under § 6961 within 15 days of this Order only if, however, LEAN can assert a bonafide claim under § 6961.

New Orleans, Louisiana, this ____2nd___ day of November, 2007.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**